**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**SELJIM NIKCI,**

                    **Plaintiff,**

          **- against –**

**QUALITY BUILDING SERVICES, ET AL.,**

                    **Defendants.**
────────────────────────────────

**12 Civ. 8818 (JGK)**

**OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

     The plaintiff, Seljim Nikci ("Nikci"), brings this action against defendants Service Employees International Union Local Union 32BJ ("Local 32BJ") and QBS Building Services ("QBS"), (collectively "the defendants").  The dispute concerns disciplinary action taken by QBS against Nikci after Nikci allegedly misrepresented whether he had witnessed an altercation that occurred between a QBS employee and a QBS supervisor. Nikci challenged the disciplinary action in proceedings brought pursuant to the applicable collective bargaining agreement, and Local 32BJ represented Nikci in those grievance proceedings. Nikci alleges that, in the course of representing him, Local 32BJ breached the duty of fair representation that courts have derived from Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a).  Further, Nikci alleges that QBS breached its obligations under the operative collective bargaining agreement by terminating him without cause and by coercing him

1

into signing a settlement agreement (the "Settlement Agreement")
in violation of Section 301(c) of the Labor Management Relations
Act of 1947, 29 U.S.C. § 185.

Defendants Local 32BJ and QBS move pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure to dismiss
Nikci's claims.  Because this action arises under the Labor
Management Relations Act, this Court has jurisdiction pursuant
to 29 U.S.C. § 185(a) and 28 U.S.C. § 1331.  For the reasons
explained below, the Amended Complaint fails to state a claim
that Local 32BJ breached its duty of fair representation or that
QBS breached any obligations under the collective bargaining
agreement.  Accordingly, the defendants' motions to dismiss are
**granted**.


                                 I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiffs' favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007).  The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.

                                 2

1985).  A complaint should not be dismissed if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While factual allegations should be construed in the light most favorable to the plaintiffs, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2000); see also Wilson v. Am Postal Workers Union, AFL-CIO, No. 11 Civ. 3097, 2012 WL 3822565, at *1 (S.D.N.Y. Sept. 4, 2012).

II.

The following facts are accepted as true for purposes of this motion, unless otherwise indicated.

A.

Defendant QBS provides cleaning and maintenance services to commercial buildings in the New York metropolitan area. (First Amended Complaint ("FAC") at ¶ 4.) Defendant Local 32BJ is a labor union that represents workers who provide cleaning and maintenance services. (FAC ¶ 5.) Nikci was at all times relevant to this action both an employee of QBS and a member of Local 32BJ. (FAC ¶ 6.) He began providing cleaning and maintenance services at 444 Madison Avenue in 1997 and later became the Shop Steward for all Local 32BJ members employed at that building. (FAC ¶ 24.) QBS took over the commercial building at 444 Madison Avenue in 2008. (FAC ¶ 12.)

B.

In or about January 2008, Local 32BJ negotiated a collective bargaining agreement with the Realty Advisory Board, an entity that represents several employers in the building services industry. (FAC ¶¶ 7, 8.) The 2008 Collective Bargaining Agreement was effective from January 1, 2008 until

4

December 31, 2011, and was renewed through December 31, 2015 (the "Collective Bargaining Agreement").  (FAC ¶ 7.)

QBS is one of many employers that the Realty Advisory Board represents and to which the Collective Bargaining Agreement applies.  (FAC ¶ 8.)  Under the Collective Bargaining Agreement, QBS may not terminate employee members of Local 32BJ "except for justifiable cause."  (FAC ¶ 9.)  "If an employee is unjustly discharged, he/she shall be reinstated to his/her former position without loss of seniority or rank and without salary reduction."  (Affirmation of Robert A. Sparer ("Sparer Aff.") Ex. A ("CBA") at 5.)  The Collective Bargaining Agreement contains a grievance procedure for managing disputes between employers and employees.  (FAC ¶ 10.)  If the grievance procedure is unsuccessful, the Collective Bargaining Agreement provides for arbitration between the parties.  (FAC ¶ 10.)


C.

On June 7, 2012, Nikci and three coworkers were told to carry several boxes from 444 Madison to a car parked in front of the building and driven by QBS supervisor Driton.  (FAC ¶ 25.) When Nikci and his coworkers delivered the boxes, Driton began to insult them.  (FAC ¶ 26.)  One of Nikci's coworkers, Becir Cosaj, responded to Driton, and a verbal altercation ensued.

5

(FAC ¶ 26.)  Surveillance video recorded by the security system at 444 Madison Avenue establishes that the verbal altercation between Driton and Cosaj escalated into a physical altercation.[1] The video appears to show Cosaj twice attempting to strike Driton by reaching through the open driver's side window of Driton's vehicle.  Nikci alleges that the video shows that, after observing what might appear to be "aggressive behavior on the part of Cosaj directed at Driton," Nikci physically intervened to cause it to stop.  (FAC ¶ 34.)  As the plaintiff explains it, he "put his own safety at risk to prevent further threat or harm to Driton."  (FAC ¶ 34 n. 3.)

After the incident between Cosaj and Driton occurred, QBS questioned Nikci about what he had observed.  (FAC ¶ 27.)  On June 8, 2012, Nikci attempted to file a grievance with Local 32BJ.  (FAC ¶ 28.)  Although Nikci claims that Local 32BJ refused to process his grievance, Nikci was directed by a QBS supervisor to report to Local 32BJ on June 18, 2012.  (FAC ¶¶ 28, 29.)  Once at Local 32BJ, Nikci met with representatives from QBS, along with his union delegate and union attorney. (FAC ¶ 29.)  No one at the meeting spoke Albanian, Nikci's native language.  (FAC ¶ 30.)  At the meeting, QBS

---

[1] The plaintiff relied on the surveillance footage in his Amended Complaint and made the surveillance video part of the record on this Motion to Dismiss.

6

representatives asked Nikci if he had witnessed Cosaj assault
Driton on June 7. (FAC ¶ 31.) Nikci replied that he had not
seen Cosaj assault Driton. (FAC ¶ 31.) According to Nikci, his
denial was intended to convey that he did not see the precise
moment when Cosaj made physical contact with Driton, and that
when he saw aggressive behavior by Cosaj toward Driton, he
physically intervened to stop it. (FAC ¶ 34.)

After Nikci reiterated that he had not seen Cosaj assault
Driton, QBS representatives allegedly called Nikci a liar and
threatened him with disciplinary action. (FAC ¶ 31.) QBS
representatives then produced the surveillance video that had
captured the assault and reviewed it with Nikci. (FAC ¶ 32.)
After the parties had reviewed the surveillance video, Local
32BJ officials presented Nikci with the Settlement Agreement and
informed Nikci that if he refused to sign the Settlement
Agreement, he would be terminated by QBS. (FAC ¶ 35.) The
Settlement Agreement stated that Nikci was terminated effective
June 18, 2012. (FAC ¶ 37.) Accordingly, the Settlement
Agreement provided that "[Nikci's] discharge effective June 18,
2012 is hereby rescinded and converted into a disciplinary
suspension, final warning and transfer" to the QBS building at
575 Fifth Avenue in New York, New York, in a position covered by
the Collective Bargaining Agreement. (Sparer Aff. Ex. C.)

Under the Settlement Agreement, Nikci would waive all claims against QBS and acknowledge that QBS owed him no salary, wages, overtime or benefits in connection with his employment before June 18, 2012.  (Sparer Aff. Ex. C.)  Nikci initially refused to sign the Settlement Agreement.  (FAC ¶ 35.)  According to Nikci, union officials responded to his refusal by yelling at him, calling him a liar, and telling him that his only option was to sign the Settlement Agreement.  (FAC ¶ 36.)  Nikci subsequently signed the Agreement.  (Sparer Aff. Ex. C.)

On June 19, 2012, the day after Nikci signed the Settlement Agreement, Nikci contacted Local 32BJ and informed his union delegate that he wanted to rescind the Settlement Agreement. (FAC ¶ 38.)  Nikci's union delegate informed him that he could not rescind the Settlement Agreement, and that Local 32BJ would not process the grievance that Nikci wanted to file against QBS. (FAC ¶ 38.)  As a result, Nikci brought this action.

Nikci makes several allegations against Local 32BJ and QBS. With respect to Local 32BJ, Nikci claims a breach of the duty of fair representation.  According to Nikci, Local 32BJ did not adequately represent him for two reasons.  First, the Union failed to provide Nikci with an Albanian interpreter, despite Nikci's "rudimentary" command of English.  (FAC ¶¶ 35, 36, 49.) Second, the Union allegedly coerced Nikci into signing the

8

Settlement Agreement, refused to assist Nikci in pursuing rescission, and refused to process his subsequent grievance. (FAC ¶¶ 50, 51.)

With respect to QBS, Nikci alleges that QBS breached the Collective Bargaining Agreement by coercing him into signing the Settlement Agreement.  (FAC ¶ 44.)  Nikci also claims that QBS breached the Collective Bargaining Agreement by disciplining him without adequate cause.  (FAC ¶ 43.)  According to Nikci, QBS disciplined him for discriminatory reasons, namely, the company's animus towards individuals of Albanian descent.[2]  (FAC ¶¶ 22, 44.)  Nikci contends that the number of Albanian individuals working on his shift dropped from seventeen to six after QBS assumed control over the building at 444 Madison Avenue.  (FAC ¶¶ 18, 21.)

Nikci seeks compensatory and consequential damages totaling at least $500,000, in addition to punitive damages and attorneys' fees and costs.  Nikci also seeks specific performance of the Collective Bargaining Agreement, reinstatement, and backpay, and an injunction prohibiting the defendants from engaging in unlawful discrimination against him. The defendants move to dismiss all claims.

---

[2] The plaintiff argues only that QBS was motivated by prejudice to breach the Collective Bargaining Agreement.  The plaintiff does not bring any discrimination claims against QBS.

9

III.

The plaintiff brings a hybrid action alleging that Local 32BJ breached its duty of fair representation and that QBS breached the Collective Bargaining Agreement.  See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983); see also Mussafi v. Fishman, No. 12 Civ. 2071, 2012 WL 5473874, at *4 (S.D.N.Y. Nov. 12, 2012).  "[T]he two claims are inextricably interdependent.  To prevail against either the company or the Union . . . employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.  Mussafi, 2012 WL 54735874, at * 4 (quoting DelCostello, 462 U.S. at 164-65).  The Court will first consider the plaintiff's allegation against Local 32BJ, and then consider the plaintiff's allegation against QBS.

"A claim for breach of the duty of fair representation consists of two elements."  White v. White Rose Food, 237 F.3d 174, 179 (2d Cir. 2001).  The first element is substantive and requires that a plaintiff demonstrate that the union's "conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith."  Id. (quoting Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998)).  The second

10

element pertains to causation and requires that a plaintiff demonstrate "a causal connection between the union's wrongful conduct and [the plaintiff's] injuries." Id. (quoting Spellacy v. Airline Pilots Ass'n Int'l, 156 F.3d 120, 126 (2d Cir. 1998)).

A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' . . . as to be irrational." Spellacy, 156 F.3d at 129 (alteration in original) (quoting Airline Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991)).  In other words, the union's conduct must be "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." NLRB v. Local 282, Int'l Bhd. of Teamsters, 740 F.2d 141, 147 (2d Cir. 1984) (citation and internal quotation marks omitted).  "A settlement is not irrational and thus arbitrary simply because it turns out in retrospect to have been a bad settlement." White, 237 F.3d at 179 (citation and internal quotation marks omitted).  Such standards of arbitrariness are intended to ensure that unions have "room to make discretionary decisions and choices, even if [union] judgments are ultimately wrong." Marquez, 525 U.S. at 45-46; see also Mussafi, 2012 WL 54735874, at * 4.

11

A union acts in bad faith when it acts fraudulently, deceitfully, or dishonestly, White, 237 F.3d at 179, and with "an improper intent, purpose, or motive." Vaughn v. Airline Pilots Ass'n. Intl., 604 F.3d 703, 710 (2d Cir. 2010) (quoting Spellacy, 156 F.3d at 126). A union's discriminatory conduct is unlawful when it is "intentional, severe, and unrelated to legitimate union objectives." Amalgamated Ass'n of State Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge, 403 U.S. 274, 301 (1971).

In evaluating union conduct, courts must be mindful that a union necessarily possesses "broad discretion in its decision whether and how to pursue an employee's grievance against an employer." Tomney v. Int'l Ctr. for the Disabled, 357 F. Supp. 2d 721, 737 (S.D.N.Y. 2005) (quoting Chauffeurs Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 567-68 (1990)). Union discretion "is essential to the proper functioning of the collective-bargaining system" because it "promotes settlements, avoids processing of frivolous claims, and strengthens the employer's confidence in the union." Id. (quoting Int'l Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 51 (1979)). "Without these screening and settlement procedures, . . . the costs of private dispute resolution could ultimately render the [collective bargaining system] impracticable." Foust, 442 U.S. at 51.

Union decisions are, accordingly, entitled to significant deference.  See, e.g., Spellacy, 156 F.3d at 126; see also Mussafi, 2012 WL 5473874, at *4.  Nikci nevertheless claims that Local 32BJ breached the duty of fair representation for two reasons.[3]

A.

Nikci first argues that Local 32BJ breached its duty of fair representation by failing to provide an interpreter through whom Nikci could communicate in his native language, Albanian. According to Nikci, his poor command of English precluded him from representing with precision what he observed with respect to the altercation between Cosaj and Driton and from understanding the grievance proceeding and Settlement Agreement. Nikci maintains that the failure to provide an interpreter in

---

[3] Although Nikci makes several additional claims in his Amended Complaint, none bear on the disposition of these motions.  Nikci alleges that Local 32BJ failed to process his initial grievance and to defend him against QBS's accusations.  These claims are without merit because Nikci's union representatives plainly pursued Nikci's grievance by conducting settlement negotiations on his behalf, and defended Nikci by securing his continuing employment with QBS.  Nikci also alleges that Local 32BJ breached the duty of fair representation by representing both Cosaj and Nikci in grievance proceedings.  Nikci abandoned this claim by failing to address it in his brief opposing the defendants' motions to dismiss all claims.  See, e.g., Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases).

such circumstances was arbitrary.  This argument is without merit.

At the outset, Nikci cites no authority for the proposition that the failure to provide an interpreter is sufficient to allege a breach of the duty of fair representation; indeed, courts have rejected that proposition in the past.  See Betanzos v. Kinney Sys., Inc., No. 92 Civ. 3915, 1996 WL 406524, at *5 (E.D.N.Y. July 15, 1996) aff'd 113 F.3d 1229, at *3 (2d Cir. 1997) (summary order) (failure to provide interpreter did not establish breach of duty of fair representation because record did not suggest that plaintiff required interpreter, that plaintiff requested interpreter, or that union believed interpreter was necessary).

Further, the Amended Complaint contains only two allegations in support of the plaintiff's argument that Local 32BJ was required to supply an interpreter during the grievance proceedings.  First, the plaintiff claims that no other Albanian speakers were present at the June 18 proceeding.  (FAC ¶ 30.) Second, the plaintiff claims that his English is "rudimentary." (FAC ¶ 35.)  The plaintiff acknowledges, however, that he represented all Local 32BJ employees at 444 Madison Avenue in his capacity as shop steward.  The plaintiff also acknowledges that he was capable of filing his grievance with Local 32BJ and

14

that he was able to communicate on several occasions that he had not seen Cosaj assault Driton.  The plaintiff never alleges that he indicated to Local 32BJ that he needed a translator.

Given the plaintiff's admitted ability to communicate in English and his failure to indicate to Local 32BJ that he needed an interpreter, it was not irrational for Local 32BJ to conclude that it would benefit Nikci to present his case directly, rather than through an interpreter.  See Lebron v. Int'l Bhd. of Elec. Workers, Local 1505, No. 91 Civ. 11451, 1992 WL 142032, at *1 (D. Mass. June 9, 1992).  The Union's decision to proceed without an interpreter was at most negligent, and "mere negligence . . . [does] not state a claim for breach of the duty of fair representation." United Steelworkers of Am. v. Rawson, 495 U.S. 362, 372-73 (1990); Lebron, 1992 WL 142032 at *1; see also Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43 (2d Cir. 1989) ("Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.").  Accordingly, "in light of the factual and legal landscape at the time of [Local 32BJ's] actions," Nikci's argument that the Union's failure to supply an

15

interpreter was a breach of the duty of fair representation is without merit.  Spellacy, 156 F.3d at 129.[4]


                                 B.

     Nikci next argues that Local 32BJ coerced him into accepting the Settlement Agreement by instructing him that QBS would terminate his employment in the event that he failed to enter into the Settlement Agreement.  Nikci's claim is ostensibly one of economic duress.

     As an initial matter, Nikci's claim that Local 32BJ breached its duty of fair representation by coercing him into entering the settlement agreement fails because "a party to a contract cannot invoke a duress defense where his own advisor or representative pressured him into acceptance of a deal." Mandavia v. Columbia Univ., 912 F. Supp. 2d 119, 128 (S.D.N.Y. 2012); see also Evans v. Waldorf-Astoria Corp., 827 F. Supp. 911, 914 (E.D.N.Y. 1993), aff'd, 33 F.3d 49 (2d Cir. 1994).

---

[4] The plaintiff also argues that Local 32BJ's failure to provide an interpreter at the grievance proceeding was discriminatory. However, the Amended Complaint does not contain a single allegation from which an inference of discriminatory conduct by Local 32BJ could be inferred.  Indeed, the plaintiff was Local 32BJ's shop steward.  Moreover, the Amended Complaint makes no allegation that the Union's conduct was intentionally discriminatory, severe, and unrelated to legitimate union objectives.  See Lockridge, 403 U.S. at 301.  Accordingly, the plaintiff has not plausibly alleged that Local 32BJ's failure to provide an interpreter was discriminatory.

The plaintiff's claim also fails because the plaintiff has not adequately alleged that he was under economic duress.  In order to show that a settlement agreement should be invalidated on the grounds of economic duress, a plaintiff must allege "a wrongful threat . . . that precluded the exercise of [the plaintiff's] free will."  Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n, 655 F.3d 136, 142 (2d Cir. 2011); see also Mathias v. Jacobs, 167 F. Supp. 2d 606, 614 (S.D.N.Y. 2001).  The Amended Complaint fails to allege that Local 32BJ made any such threats.  Rather, Local 32BJ informed the plaintiff that if he failed to sign the Settlement Agreement, the plaintiff's employer would terminate the plaintiff.  By advising the plaintiff what the employer would do if there was no settlement, Local 32BJ did not prevent the plaintiff from exercising his free will to choose between settlement and the alternative of termination presented by the employer.  See, e.g., Nicholas v. NYNEX, Inc., 929 F. Supp. 727, 732-33 (S.D.N.Y. 1996) (rejecting duress claim where plaintiff felt forced to sign release "because he anticipated difficulty in finding a new job and feared that he would not be able to make his mortgage payments while he was out of work").  By advising Nikci of his options, the Union did not deprive him of any options he otherwise had.  See Drakakis v. ABM Janitorial Serv.-Northeast, Inc., No. 09

17

Civ. 1884, 2011 WL 1219843, at *4 (S.D.N.Y. Mar. 24, 2011) (to allege duress, plaintiff must plead that threat "caused involuntary acceptance of contractual terms, . . . because the circumstances permitted no alternative"). Accordingly, Nikci's claim that Local 32BJ breached the duty of fair representation by coercing him into signing the Settlement Agreement is without merit.

C.

Nikci's remaining claims against Local 32BJ are also without merit. Nikci argues that the Union breached its duty of fair representation by refusing to assist him in rescinding the Settlement Agreement and by refusing to process his second grievance against QBS. However, "[a] union's good faith, non-arbitrary failure to take an action that is unlikely to be advantageous does not subject it to liability for breach of its duty of fair representation." Barr, 868 F.2d at 44. Indeed, union members "do not have an 'absolute right to have [their] grievances taken to arbitration,'" unless their union arbitrarily ignores a meritorious grievance. Spellacy, 156 F.3d at 128 (alteration in original) (quoting Vaca v. Sipes, 386 U.S. 171, 191 (1967)); see also Wilson, 2012 WL 3822565, at *4.

In this case, Local 32BJ secured for the plaintiff continued employment, which Local 32BJ represents was without

18

any loss in wages or benefits. Accordingly, it was not irrational for the Union to conclude that rescission of the Settlement Agreement, termination of the plaintiff's employment, and a subsequent grievance were not only unnecessary to advance the plaintiff's interests, but also detrimental to the plaintiff's interests. See id. at 43. The plaintiff also fails to plausibly allege that the Union reached its conclusion that further action was unwarranted for discriminatory reasons or in bad faith. The Amended Complaint contains no allegations that Local 32BJ acted with discriminatory intent and, with respect to bad faith, the Amended Complaint alleges only that the former head of Local 32BJ is distantly related to the President of QBS. (FAC ¶ 14.) These relationships, in the absence of any further allegations of bad faith, do not support a plausible claim that Local 32BJ acted in bad faith because they do not suggest that the Union acted fraudulently, deceitfully, or dishonestly, White, 237 F.3d at 179, and "with improper intent, purpose, or motive." Vaughn, 604 F.3d 709-710. Accordingly, the plaintiff has not alleged that Local 32BJ, in failing to seek rescission of the Settlement Agreement or to pursue a second grievance against QBS, acted arbitrarily, discriminatorily, or in bad faith.

The plaintiff has failed to allege plausibly that Local 32BJ violated the duty of fair representation in representing the plaintiff.  Therefore, the plaintiff's claim for breach of the duty of fair representation must be **dismissed**.

D.

Because the plaintiff's claim for breach of the duty of fair representation must be dismissed, the plaintiff's claim against QBS for breach of the collective bargaining agreement must also be **dismissed**.  See Flanigan v. Truck Drivers Local No. 671, 942 F.2d 824, 828-29 (2d Cir. 1991); see also DelCostello, 462 U.S. at 164-65.  Moreover, the plaintiff's claim against QBS for breach of the collective bargaining agreement fails for a second reason, namely, that the plaintiff released his claims against QBS in a valid Settlement Agreement.

Nikci, Local 32BJ, and QBS entered into a Settlement Agreement on June 18, 2012.  The Settlement Agreement contains a release which provides that Nikci

> waives any and all claims, liabilities and damages, causes of action and grievances of any kind, in connection with his employment and the termination of his employment, which [Nikci] had, now has or may have against the Employer known or unknown to [Nikci].

(Sparer Aff. Ex. C.)  Because the Settlement Agreement contains a New York choice of law provision, the release

must be interpreted pursuant to New York law.  (Sparer Aff.

Ex. C.)  Under New York law, the release is governed by

rules of contract.  See, e.g., DiFillipo v. Barclays

Capital, Inc., 552 F. Supp. 2d 417, 426 (S.D.N.Y. 2008).

Those rules provide that "[c]ourts applying New York law

will enforce valid releases which are clear and unambiguous

on their face and which were knowingly and voluntarily

entered into and were not the product of fraud, duress, or

undue influence."  Id. (quoting Skluth v. United Merch. &

Mfr. Inc., 559 N.Y.S.2d 280, 292 (App. Div. 1990)); see

also MM Arizona Holdings LLC v. Bonanno, 658 F. Supp. 2d

589, 595 (S.D.N.Y. 2009).

In this case, the plaintiff contends only that the release

is invalid because it was the product of economic duress. The

plaintiff contends that both QBS and Local 32BJ placed the

plaintiff under economic duress.  The argument is without merit.

With respect to QBS, the Amended Complaint alleges only that QBS

representatives "yelled at Nikci, called him a liar, and

threatened him with disciplinary action."  (FAC ¶ 31.)  These

allegations are insufficient to establish duress because they do

not demonstrate how QBS's conduct in any way precluded Nikci

from exercising his free will to decline the Settlement

Agreement.  Interpharm, 655 F.3d at 142.

For the reasons explained above, the plaintiff has also failed to allege any facts plausibly supporting a claim of economic duress by Local 32BJ.  Therefore, Nikci's claim against QBS for breach of the Collective Bargaining Agreement is also barred by the valid release contained in the Settlement Agreement.

## CONCLUSION

The Court has considered all of the arguments by the parties.  To the extent not specifically addressed above, the arguments are either moot or without merit.  For the reasons explained above, the plaintiff has failed to state a claim that Local 32BJ breached its duty of fair representation or that QBS breached the Collective Bargaining Agreement.  Therefore, the defendants' motions to dismiss are **granted.  The Clerk is directed to enter judgment dismissing this action and closing the case.  The Clerk is also directed to close all pending motions.**

SO ORDERED.

Dated:     New York, New York
           January 27, 2014          _____/s/_____
                                          John G. Koeltl
                                   United States District Judge

22